UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JILL A. W.,<br><br>    Plaintiff,<br><br> v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 20 C 3854<br><br>Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff has filed a Motion to Alter/Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) [34]. For the reasons set forth below, the motion is granted in part and denied in part. The motion is granted to the extent that the Court evaluates Plaintiff's challenge to the ALJ's step four determination but concludes the ALJ did not err at step four. The motion is therefore denied in all other respects, and the judgment entered on January 26, 2022 [33] stands.

## BACKGROUND

Plaintiff Jill A. W. ("Jill") applied for DIB on October 2, 2017, alleging disability since June 29, 2016 due to Ehlers-Danlos syndrome, fibromyalgia, small fiber peripheral neuropathy, left side weakness with foot drop, chronic fatigue, spinal neuritis, autonomic dysfunction, hypothyroidism, left hip pain with labrum tear and osteoarthritis, and a sleep disorder. She has a history of chronic migraine headaches, an eating disorder, insomnia, irritable bowel syndrome, post-traumatic stress disorder, generalized anxiety disorder, depression, and medication overuse. After her claim was denied at all levels of administrative review, Jill sought judicial review. In denying Jill's request for reversal and remand and granting the Acting Commissioner's motion for summary judgment, the Court upheld the ALJ's finding that Jill was not disabled.

*Jill A. W. v. Kijakazi*, 2022 WL 225879 (N.D. Ill. Jan. 26, 2022). With final judgment entered, Jill now moves to alter or amend the judgment entered on January 26, 2022 pursuant to Federal Rule of Civil Procedure 59(e).

As part of her decision, the administrative law judge ("ALJ") determined that Jill had the residual functional capacity ("RFC") to perform sedentary work with additional postural, manipulative, and environmental limitations. (R. 70-75). Based on that RFC, the ALJ found at step four that Jill could perform her past relevant work as a user support analyst supervisor and vice president as generally performed. *Id*. at 75-76. In challenging that determination before this Court, Jill argued that the ALJ erred by misclassifying her past work as a user support analyst supervisor because she did not perform the job of a user support analyst supervisor as described in the Dictionary of Occupational Titles ("DOT"). Doc. 19 at 13-14. Regarding her prior vice president position, Jill argued that the ALJ impermissibly relied on a broad, generic classification of her occupation. *Id*. at 14-15. She further argued that the failed to evaluate that position as a composite job that combined elements of a consultant and vice president and thus, the ALJ erred in considering how the job is generally performed as opposed to how Jill actually performed it with her prior employer. *Id*. at 15.

In its opinion, the Court did not rule on whether substantial evidence supported the ALJ's step four determination. *Jill A. W.*, 2022 WL 225879, at *12. Rather, the Court explained that the vocational expert ("VE") testified that other jobs existed in the national economy for a hypothetical person with the RFC assigned by the ALJ to Jill who was further limited to simple routine tasks and simple work-related decisions. *Id*. The Court noted that if a person was limited to simple routine tasks and simple work-related decisions, she would be more limited than the RFC found by the ALJ, which included no mental limitations. *Id*. As a result, the Court found any error

2

in the ALJ's step four finding was harmless because the VE testified that an individual of Jill's background, who had the RFC to perform an even more limited range of sedentary work than found by the ALJ, could perform other jobs existing in sufficient numbers in the national economy, including document preparer, telephone information clerk, and charge account clerk. *Id*. Thus, the VE's testimony showed that the ALJ's decision would be the same under this alternative RFC at step five. *Id*.

## **DISCUSSION**

In her motion to alter or amend, Jill argues that the Court erred in failing to consider her step four challenge based on harmless error and the VE's testimony about other jobs where the ALJ did not make an alternative step-five finding. Jill also challenges the other jobs identified by the VE (a step five consideration). In response, the Commissioner maintains that that Jill is inappropriately attempting to relitigate her step four arguments that the Court has already rejected. The Commissioner also argues that the Court did not err in holding that any error at step four relating to Jill's past relevant work was harmless. The Commissioner further submits that Jill forfeited her arguments regarding her past relevant work by failing to object during the hearing before the ALJ. Finally, the Commissioner argues that: (1) Jill improperly raises new arguments regarding the other jobs in the national economy identified by the VE; (2) she waived any challenge under SSR 00-4p to the other jobs by failing to object at the hearing and failing to establish that any conflict was so obvious that the ALJ should have noted it; and (3) her arguments about the other jobs identified by the VE are without merit.

Generally, "[a] motion under Rule 59(e) may be granted only if there has been a manifest error of fact or law, or if there is newly discovered evidence that was not previously available." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). Moreover, a motion to

3

reconsider under Rule 59(e) cannot be used to "to advance arguments or theories that could and should have been made before the district court rendered a judgment." *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 932 (7th Cir. 2018) (citations and internal quotation marks omitted). With these standards in mind, the Court considers Jill's motion.

A.   **Harmless Error Analysis**

Initially, the Court notes that Jill's original briefing did not preserve a challenge to the Court's finding that any alleged error in the ALJ's step four finding is harmless. In the previous briefing, Jill did not argue, as she does now, that alleged erroneous step four findings cannot be rendered harmless by VE testimony when the ALJ's decision did not include an alternative step five finding. Rather, Jill's only reply to the Commissioner's harmless error argument was: "as to the harmless error for the alternative Step Five jobs, again, as noted in the opening brief and *infra*, [Jill] disputes the ALJ's finding she is capable of light work."[1] Doc. 30. Thus, Jill argued the ALJ's findings as to her functional limitations were wrong, but she did not raise the precise argument she raises here, namely, that a harmless error finding cannot be made based on the VE's testimony regarding other jobs where the ALJ did not include an alternative step five finding in her decision. Ordinarily, arguments not raised in the original briefing are waived. *See Pole v. Randolph*, 570 F.3d 922, 938-39 (7th Cir. 2009); *Mungo v. Taylor*, 355 F.3d 969, 978 (7th Cir. 2004) ("Arguments raised for the first time in connection with a motion for reconsideration . . . are generally deemed to be waived."). However, in this case, the Commissioner has not made a waiver argument, and a waiver argument can be waived. *See United States v. Stapleton*, 56 F.4th 532, 541 (7th Cir. 2022) ("But rather than assert waiver, the government addressed [defendant's] argument on the merits. We will do the same."); *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 485

---

[1]   The Court assumes that Jill's reference to "light work" was inadvertent and she intended to refer to "sedentary work" given that the ALJ's RFC provided for a range of sedentary work. (R. 70).

4

n.30 (7th Cir. 2022) (defendant "does not raise the waiver issue in her appeal brief, and a waiver argument can be waived."); *Nolen v. Sullivan*, 939 F.2d 516, 518-19 (7th Cir. 1991) (finding in social security disability case that the government "waived the waiver issue"). By failing to argue that Jill forfeited this particular argument and by responding to Jill's harmless error argument, the Commissioner has waived the waiver argument. The Court therefore exercises its discretion to proceed to the merits of the harmless error issue raised by Jill. *Fifth Third Mortgage Co. v. Kaufman*, 934 F.3d 585, 588 (7th Cir. 2019).

The Commissioner argues that the Court properly concluded that any alleged error at step four was harmless. As a general proposition, the harmless error standard applies to judicial review of ALJ decisions in social security disability cases. *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022). The Commissioner invites the Court to hold that an alternative step five finding by the ALJ was not necessary to find harmless error here because there is sufficient VE testimony in the record to justify a decision against Jill at step five. In support, the Commissioner cites cases in this district which have found the harmless error standard applies to a physician's proposed RFC restriction not adopted by the ALJ where the VE testified that someone with that additional limitation could still perform the claimant's past relevant work or a significant number of other jobs. Doc. 36 at 4. While the harmless error rule has been used in such a context, the Commissioner does not direct the Court to a decision in which a court has expressly held that the harmless error doctrine properly applies to an erroneous step four finding when VE testimony indicates that there were other jobs the claimant could perform but the ALJ ends her analysis at step four and does not make an alternative step five finding. Such a holding, in any event, would be inconsistent with longstanding precedent that judicial review is limited to the reasons offered by the ALJ. *See Poole v. Kijakazi*, 28 F.4th 792, 797 (7th Cir. 2022) ("We must confine our review to the reasons supplied by the

ALJ, rather than allowing the government to invent new findings to rescue an insufficient decision on appeal."); *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon."); *Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018) ("the ALJ's decision cannot be defended on a basis not articulated in her order"); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("Our review is limited to the reasons articulated by the ALJ in her decision."); *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) ("[R]egardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ."). So, the Court cannot confidently say that that any error on the ALJ's part at step four in determining that Jill could perform her past work was harmless as was the case in *Cooley v. Berryhill*, 738 F. App'x 877, 881 (7th Cir. 2018), *Guranovich v. Astrue*, 465 F. App'x 541, 543-44 (7th Cir. 2012), and *Ziegler v. Astrue*, 336 Fed. App'x 563, 570–71 (7th Cir. 2009).[2] Accordingly, in these circumstances, the Court declines to find that the alleged errors in the ALJ's step four determination were harmless and proceeds to consider Jill's challenge to the ALJ's step four finding.

**B.    ALJ's Step Four Determination**

Turning to step four, Jill argues that the ALJ committed reversible error in finding her capable of performing her past relevant work. When making a determination at step four, "[p]ast

---

[2] *See also Getch v. Astrue,* 539 F.3d 473, 481 (7th Cir. 2008) ("Had the ALJ conducted a step-five analysis to determine whether [claimant] could perform other jobs in the national economy, the error [step four] might be harmless. Nevertheless, he did not do so here, and we cannot fill that gap."); *Garcia v. Colvin,* 2013 WL 3321509, at *11 (N.D. Ill. June 28, 2013) ("we conclude that the ALJ's step four finding requires reversal. We reject the Commissioner's argument that the ALJ's step four finding is harmless error given the VE's testimony that Garcia could perform other work in the national economy. Not only are there other errors requiring remand here, the ALJ did not make a step five finding and we cannot simply 'fill that gap.'").

work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work." SSR 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982). At step four, "the burden of proof rests on the claimant to establish that she is not capable of performing her past work." *Sevec v. Kijakazi*, 59 F.4th 293, 300 n. 35 (7th Cir. 2023); *Getch*, 539 F.3d at 480.

At the hearing, Jill testified that she has an MBA and worked previously as an IT manager and chief information officer at a greeting card company and as a vice president at a Dutch dairy trading firm and. (R. 89-91). The ALJ asked the VE to describe Jill's past relevant work. *Id*. at 118-19. The VE classified Jill's two past jobs as User Support Analyst Supervisor (DOT 032.132-010) and Vice President (DOT 189.117-034). *Id*. at 119. The ALJ asked the VE if her testimony was consistent with the DOT. *Id*. at 122. The VE responded that her testimony was largely consistent with the DOT, except with regard to absenteeism and off task behavior, where she applied her education and work experience. *Id*. Jill's attorney did not question the VE. *Id*. In accordance with the VE's testimony, the ALJ found that Jill could not perform her past relevant work as she actually performed it but she remained able to engage in such work as generally performed. *Id*. at 75-76, 119-20. Jill challenges the ALJ's conclusion that she can perform her past relevant work, both as a User Support Analyst Supervisor and as a Vice President. The Court's analysis focuses on the Vice President job, since it is clear that Jill has failed to demonstrate that the ALJ erred in evaluating her past relevant work as a vice president and this conclusion is dispositive of her motion. *See Dowlen v. Colvin*, 658 F. App'x 807, 813 (7th Cir. 2016) (a claimant "needs to be able to perform only one of her past relevant jobs in order to be considered not disabled."). Given this conclusion, the Court need not address the remaining argument Jill raises as to the User Support Analyst Supervisor job.

Jill contends that the ALJ erred by failing to properly evaluate her past relevant work as a vice president because: (1) the ALJ improperly relied on a broad, generic classification of her occupation and (2) her position "appears to be a composite of a consultant and VP." Doc. 19 at 14-15; Doc. 34 at 6-7. The Court disagrees with Jill on both counts. Regarding her first argument, Social Security Rule 82-61 makes it "clear that broad, generic occupation classification of a job such as 'delivery job' or 'packing job' are insufficient to test whether a claimant can perform past relevant work." *Vertigan v. Halter*, 260 F.3d 1044, 1051 (9th Cir. 2001); *see* SSR 82-61, 1982 WL 31387, at *1 (1982) ("Finding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable."). In this case, however, the ALJ did not rely on a generic classification of the vice president job. Rather, the ALJ specifically relied on the VE's classification of Jill's past vice president work under DOT l89.117-034, which is titled "Vice President (any industry)," and the DOT's description of that job. (R. 76, 119). SSR 82-61 provides that DOT numbers may be relied upon to define a job as it is usually performed in the national economy. SSR 82-61, 1982 WL 31387, at *2 ("The *Dictionary of Occupational Titles* (DOT) descriptions can be relied upon—for jobs that are listed in the DOT—to define the job as it is *usually* performed in the national economy. . . . It is understood that some individual jobs may require somewhat more or less exertion than the DOT description."). Jill has not demonstrated that the ALJ's reliance on DOT l89.117-034 equates to the ALJ impermissibly concluding that Jill could perform her past relevant work based on a broad, generic occupational classification of that job. Therefore, the ALJ did not improperly rely on a broad, generic classification of Jill's past relevant work as Jill suggests. *Cf. Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1167 (9th Cir. 2008) (remanding where ALJ relied on VE's the generic classification of the plaintiff's past relevant without explanation and VE failed to identify

8

a specific DOT listing); *Leggett v. Chater*, 77 F.3d 492 (Table), 1996 WL 71746, at *2–3 (10th Cir. Feb. 20, 1996) (holding ALJ erred in classify the plaintiff's past relevant work as "purchasing agent" to refer to a generic classification of purchasing-related jobs, despite a specific DOT listing for "purchasing agent" which the ALJ did not mention).

Also unavailing is Jill's assertion that the ALJ erred by not considering whether her past relevant work as a vice president constituted a composite job, which resulted from the ALJ failing to resolve the apparent conflict between the DOT definition and the VE's classification of Jill's past relevant work.³ "Composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT." SSR 82–61, 1982 WL 31387, at *2. Additionally, "[a] claimant is not disabled if he can do his past relevant work either in the manner he performed it before the impairment *or* in the manner it is generally performed in the national economy." *Ray v. Berryhill*, 915 F.3d 486, 491 (7th Cir. 2019) (emphasis in original). However, "[i]f the prior position was a composite job, the ALJ may not reference [the DOT] when determining whether a claimant can perform his past job." *Id*; *Wiggins v. Colvin*, 2015 WL 2398478, at *5 (N.D. Ill. May 18, 2015) ("Where a claimant's past relevant work consists of a composite job, the ALJ must evaluate the particular facts of an individual case."). "'Picking out the line' of how to define a claimant's past relevant work is 'a task for the agency, subject to light judicial review." *Wiggins*, 2015 WL 2398478, at *5 (quoting *Smith v. Barnhart*, 388 F.3d 251, 253 (7th Cir. 2004)).

---

³ The Commissioner argues that Jill forfeited this issue because neither she nor her attorney raised it during the administrative hearing. Doc. 25 at 14-15; Doc. 36 at 2 n.2. This argument ignores that the Seventh Circuit has established an exception to the waiver rule when "conflicts were obvious enough that the ALJ should have picked upon them without any assistance." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). "[B]ecause SSR 00-4p imposes an affirmative duty on the ALJ to inquire into and resolve apparent conflicts, a claimant's failure to raise a possible violation of SSR 00-4p at the administrative level does not forfeit the right to argue later that a violation occurred." *Id*. Jill therefore did not waive the issue of an apparent conflict by failing to raise it before the ALJ.

9

Moreover, "[i]f "evidence from a VE 'appears to conflict with the DOT,' SSR 00-4p requires further inquiry: an ALJ must obtain 'a reasonable explanation for the apparent conflict.'" *Overman*, 546 F.3d at 463; SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). A conflict is apparent if it is "so obvious that the ALJ should have picked up on [it] without any assistance." *Weatherbee v. Astrue*, 649 F.3d 565, 570 (7th Cir. 2011) (quoting *Overman*, 546 F.3d at 463). The ALJ must resolve any apparent conflicts even if the claimant's counsel did not raise the issue at the administrative level. *Overman*, 546 F.3d at 463; *Weatherbee*, 649 F.3d at 570 ("Ruling 00-4p requires ALJs to investigate and resolve any apparent conflict between the VE's testimony and the DOT."); *see also Brown v. Colvin*, 845 F.3d 247, 254-55 (7th Cir. 2016) (where the VE's testimony appears to conflict with the DOT, "a claimant's failure to object during a hearing cannot excuse an ALJ's failure to" obtain a reasonable explanation for the apparent conflict).

Based on Jill's testimony and the evidence in the record regarding her work background, the VE classified Jill's past work as a "Vice President" (Any Industry) (DOT 189.117-034). (R. 118-19). The DOT lists the main duties of the vice president occupation as directing and coordinating activities of one or more departments and aiding the chief administrative officer in formulating and administering organization policies. DOT 189.117-034, 1991 WL 671490. The ALJ adopted the VE's opinion that Jill's past relevant work at the Dutch dairy trading firm was appropriately categorized as Vice President, DOT 189.117-034, sedentary level of exertion, skilled work with an SVP of 8. (R. 76). The ALJ did not analyze Jill's past job as a composite job. Neither Jill nor her attorney raised the composite job issue during the hearing before the ALJ. As a result, Jill must now demonstrate that "the conflicts were obvious enough that the ALJ should have picked up on them without any assistance." *Surprise v. Saul*, 968 F.3d 658, 663 (7th Cir. 2020) (quoting *Overman*, 546 F.3d at 463). Jill fails to make such a showing.

10

In support of her argument that her prior vice president position appeared to be a composite job that combined elements of the Consultant and Vice President occupations, Jill cites her Work History Report and her hearing testimony. Doc. 34 at 6-7. Jill points out that in her written description, she wrote she was a "senior IT and HR management team leader." (R. 311). She further noted "she led multiple teams and staff to stabilize technology, research, and propose new processes, systems, and organizations" with domestic and global travel, working 11 hours a day and 5-6 days per week. *Id*. Jill cites her testimony that her vice president position was a newly created position and she worked six years in this one role. *Id*. 89. Jill testified that her job responsibilities were to "review the entire way and processes [within] the company worked." *Id*. at 89-90. So, she was "effectively . . . responsible for working with everybody." *Id.* at 90. She indicates that she described her role as like an "internal consultant" where she "would often get groups of people together" and be seated for one or two hour meetings or "might lead a group" and be moving around at the whiteboard. *Id*.

Jill does not explain why any of this evidence should have alerted the ALJ that there was an apparent conflict between the VE's testimony and the DOT such that she needed to evaluate and resolve whether Jill's vice president position was possibly a composite job of both a Vice President and a Consultant. In her own report about her work, Jill listed her job title as "Vice President." (R. 310). Jill contends, however, that her "testimony was enough to alert the ALJ" that her past position was composite. Doc. 39 at 2. Jill emphasizes that she testified that "her role was like an internal consultant." Doc. 34 at 6. But in fact, the testimony Jill cites shows she merely testified that her vice president "role was a *little bit* like an internal consultant," which was not sufficient to alert the ALJ to the possibility that her past work had "significant elements" from the Consultant job. *Id*. at 90 (emphasis added); SSR 82-61, 1982 WL 31387, at *2. In her briefs, Jill

11

does not even cite the DOT number for the consultant job at issue here. Doc. 34 at 6-7; Doc. 39 at 2-3; *see also* Doc. 19 at 15; Doc. 30 at 16-17. Nor does Jill discuss the demands of a consultant job under the DOT and attempt to explain how any of the job duties she described qualify as a significant element of the Consultant occupation under the DOT description.[4] Jill bears the burden of showing an apparent conflict. Based upon this record, Jill has not demonstrated that her written submission and testimony was sufficient to have alerted the ALJ to consider whether her past job as vice president was a composite job involving both the DOT occupations of Consultant and Vice President, thereby creating a discrepancy between the VE's testimony and the DOT. Therefore, Jill has waived any challenge under SSR 00-4p, and the ALJ had no duty under SSR 00-4p to resolve the alleged conflict.

In the end, Jill's description of her vice president job simply showed there was a distinction between how the vice president job is generally performed in the national economy (sedentary work) and how Jill actually performed it (light work). (R. 119). And the fact that Jill performed

---

[4] DOT 189.167-010 defines the duties of a Consultant as:

> Consults with client to define need or problem, conducts studies and surveys to obtain data, and analyzes data to advise on or recommend solution, utilizing knowledge of theory, principles, or technology of specific discipline or field of specialization: Consults with client to ascertain and define need or problem area, and determine scope of investigation required to obtain solution. Conducts study or survey on need or problem to obtain data required for solution. Analyzes data to determine solution, such as installation of alternate methods and procedures, changes in processing methods and practices, modification of machines or equipment, or redesign of products or services. Advises client on alternate methods of solving need or problem, or recommends specific solution. May negotiate contract for consulting service. May specialize in providing consulting service to government in field of specialization. May be designated according to field of specialization such as engineering or science discipline, economics, education, labor, or in specialized field of work as health services, social services, or investment services.

DOT 189.167-010, 1991 WL 671495. The Consultant occupation is at the sedentary exertional level. *Id*. Jill has offered no argument showing that any of these consultant duties made up a significant portion of her prior vice president position.

her job as a vice president at a higher exertional level than the DOT listing does not mean that she performed a composite job, and Jill cites no case law to stand for this proposition. *Felty v. Saul*, 2019 WL 6997916, at *12 (S.D.W. Va. Nov. 27, 2019) ("The fact that the exertional or functional requirements of the job as [c]laimant actually performed it were in excess of the DOT definition, does not make it a composite position."). SSR 82-61 makes clear that "some individual jobs may require somewhat more or less exertion than the DOT description" and that a claimant's former job "may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy." SSR 82-61, 1982 WL 31387, at *2. Notably, "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id.* Therefore, the ALJ did not err by failing to consider whether Jill's past relevant work as a vice president constituted a composite job.

## CONCLUSION

For all these reasons, Jill has not shown that the ALJ committed reversible error in finding that she was capable of performing her past relevant work as a vice president as generally performed. Accordingly, Jill's Motion to Alter/Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) is granted in part and denied in part. The motion is granted as to the request that the Court evaluate the step four challenge, but denied to the extent it seeks an order reversing and remanding the ALJ's decision and amending the judgment entered on January 26, 2022.

**SO ORDERED.**

Dated: April 14, 2023

Sunil R. Harjani
United States Magistrate Judge